May it please the court, I'm Jerry Singleton, and I represent the defendant in this case, Mr. Interian-Mata. Your Honor, unlike the last case, this is a case where all parties agree that Leon Paz is applicable. This is a case where Mr. Interian- I thought the government was relying on another case. Well, they are citing Gonzales-Valerio, which- They also rely on Garza-Sanchez. That's true, Your Honor, Garza-Sanchez. Why do you say all parties agree that Leon Paz controls? When I say all parties agree that Leon Paz controls, perhaps I'm overstepping. What I mean is that the facts of the case are similar to Leon Paz, and the ruling in Leon Paz regarding the denial of due process I think is very clear and controls in this case. What about the ruling in Garza-Sanchez on due process? Well, Your Honor, Garza-Sanchez, the facts are a little bit different. First of all, in Garza-Sanchez, there was an issue regarding whether or not the- I believe it's whether or not there had been a- the deportation proceeding was flawed. It's my understanding that in that case the record was not clear. Here it certainly is clear. Mr. Interior and Mata told the judge that he wished to appeal, and the immigration judge said on the record, sir, you've told me you wish to appeal. That fact was found by the district court, Judge Moskowitz. And, again, the government in their brief states they do not believe that that point is arguable. Well, I don't know if that makes it more like Leon Paz. That makes it more like Luvaldo Figueroa, doesn't it? Is that your ground? Which is my ground, Your Honor? That he indicated he wanted to appeal. That makes this case more like Luvaldo Figueroa than Leon Paz, doesn't it? Correct, Your Honor. When I say it's like Leon Paz, that's in the sense that this is a case where the due process rights of the individual were violated. The issue of prejudice was not briefed and was not ruled upon below. And, therefore, as I stated, I believe it's on all fours. The government certainly makes references to Leon Paz, stating and acknowledging that the facts are very similar. They then state that because Leon Paz was decided after the district court ruled on this issue, they try to distinguish it by citing other cases. In my opinion, they don't do so adequately. But in terms of the facts of the case, this is clearly a case where the facts are very similar to Leon Paz. We have, in this case, an alien, Mr. Interion Mata, who, like Mr. Leon Paz and Mr. Luvaldo Figueroa, pled guilty to an offense which was not an aggravated felony prior to the enactment of both ADEPA and ORIRA. Mr. Interion Mata pled guilty in 1995. Then, subsequent to his guilty plea, he pled guilty and received a three-year sentence. ADEPA and ORIRA came in. ADEPA removed 212C relief. ORIRA reclassified his offense as an aggravated felony. Based upon that, the twin bases he had, which are cited in Leon Paz and then again in Luvaldo Figueroa, for relief from deportation. First of all, the fact that he was not deportable at the time of his plea because the offense was not an aggravated felony. And second, if he was deportable, 212C relief existed and he would have applied for it since he had the requisite residency requirements. Both those were removed. So I think it is a case that is, again. But what question does that present? The question that presents is whether or not the IJ had the obligation, right? Yes, sir. To inform him at the hearing of the possible constitutional infirmity in the proceeding, right? Or is it something else? Well, again, I think it's the constitutional infirmity certainly. And this is the retroactivity argument of 321 of ORIRA, which was initially in the Luvaldo Figueroa decision. And then in the reissued decision, it was simply a concurrence because the court felt it did not need to reach the issue because it had determined that based upon the facts, Luvaldo Figueroa was prejudiced. But unlike this case, in Luvaldo Figueroa, the issue of prejudice was fully briefed and submitted to the district court. And the courts in its decision in Luvaldo Figueroa stated that because the issue has been fully explored by the district courts, we feel that we have competent facts upon which we can rule. Now, I contrast that to Leon Paz. In Leon Paz, Justice Fernandez, as he's writing the decision, states that the court below did not rule on the issue of prejudice and the district court should address this issue first. So I think that in that sense, it is like Leon Paz. Prejudice is the next step down. I'm still focusing on whether or not the I.J. had the duty to inform the alien of the possible constitutional challenge to the proceeding. And Leon Paz says yes, but the case, as I said, the government depends on, says no. No such duties. Right. If there's no such duty, then you don't even get to prejudice, do you? Well, if there's no such duty, then no, you would not get to prejudice, Your Honor. The distinction I would make between Leon Paz and Garza Sanchez, first of all, the facts of this case are much more similar to Leon Paz than they are to Garza Sanchez. Garza Sanchez was decided prior to St. Sir. It was decided in 2000, and it was also decided before this case's, this court's. Well, St. Sir has nothing to do with the requirement of giving notice, does it? Well, I think St. Sir does have something to do with the requirement of giving notice, Your Honor. Does it not state that the reason that Mr. St. Sir's deportation was flawed? I believe he waived his right to appeal, but the reason that it was flawed was because the immigration judge did not advise him that he had the opportunity to apply for relief from deportation pursuant to Section 212C of the Immigration and Nationality Act as it existed at the time he pled guilty. Well, that's actually all we said in Leon Sanchez, Leon Paz. Leon Paz says that. Yes, sir. Exactly. The reason Leon Paz says, you know, it's something exactly different from Garza Sanchez. Right, and as I see Leon Paz, and as we stated, or as I see Garza Sanchez, and as was stated in our reply brief, although Garza Sanchez has never been explicitly overruled, again, it was decided before St. Sir. It appears to contradict with St. Sir, and certainly How does it contradict St. Sir?  Again, Your Honor, on the issue of whether or not individuals, aliens, in deportation proceedings need to be advised of their rights. Did St. Sir say anything about the requirement to advise people? Show me where the Court says that. Your Honor, I do not have St. Sir before me. It is my recollection of reading the case, and if I am wrong, I certainly apologize to the Court, but it's my recollection of reading the case that Mr. St. Sir was in a position where the immigration judge failed to advise him of that right. Mr. St. Sir, actually, you are correct, Your Honor, he did appeal, unlike some of the subsequent people, as did Mr. Interior and Mater requested the right to appeal. That was denied him because he was deported prior to the time that the appeal would have been due. But in terms of whether or not the immigration judge has the responsibility to advise him, I think that is very plainly set forth in Leon Paz. I certainly see Your Honor's argument about there being a split between those two issues. I would simply say that Leon Paz and Ubaldo Figueroa are more similar on the facts to this case than is Garza Sanchez. So addressing the issue of Leon Paz again, Leon Paz and Ubaldo Figueroa make very clear that the immigration judge does have a duty to advise an individual of the right to apply for 212C relief. In this case, that was not done. In any event, there is no issue about a valid waiver of the right to appeal. That was decided at the district court, and it is conceded by the government. The issue becomes whether or not Mr. Interion Mater should have been advised of that. And again, I think there is no question. Again, under Leon Paz and Ubaldo Figueroa, he should have been advised of the right to appeal and to seek 212C relief. Now again, the issue of prejudice was not decided in this case. It was not ruled on below. It was not developed in the record. So if the court follows Leon Paz to the letter, it would simply remand the case for determination of prejudice. But what I would urge the court to do is to adopt the concurrence in Ubaldo Figueroa, and specifically to reach the issue of whether or not the retroactivity challenge of Section 321 of ORIRA is something that creates a plausible grounds for relief and in and of itself requires a dismissal. As the court is aware, in the initial decision of Ubaldo Figueroa, the court ruled initially that Mr. Ubaldo Figueroa qualified for 212C relief and was prejudiced, but then in the alternative found that under Section 321 of ORIRA, the retroactivity argument was such that he should have been advised that he had a plausible grounds for relief based upon a retroactivity challenge to Section 321 of ORIRA. The court noted that since justice story, the Supreme Court has been loath to apply statutes retroactively without an express advisal to do so from Congress. And again, what I would say is that this court was correct in Ubaldo Figueroa in the initial decision and that the concurrence in the subsequent decision in Ubaldo Figueroa should be adopted. If I have any time remaining, I'd like to reserve the balance for rebuttal. Go ahead. Good morning, Your Honors. Again, may it please the Court, Mark Rahe for the United States. Your Honor, in this case, I see this really coming down to the issue of prejudice. Let me try to clarify what defense counsel was initially trying to state. We are basically conceding that under controlling circuit of this Court and Leon Paz, the defendant does have a 212C claim and that due process was violated by the failure of the immigration judge to advise the defendant of 212C relief. But the way I see this case, there were basically two claims of a due process violation. The first was the failure to advise of 212C. The second was the failure to advise of the constitutional retroactivity challenge. This latter challenge, I believe, is squarely controlled by the Garza-Sanchez decision, which held in no uncertain terms that an immigration judge has no duty to advise an alien of a possible constitutional challenge. The case is yet to be limited, criticized, or overruled. I know that the defense says it was decided before St. Cyr, but I don't know that I think that's a distinction without a difference. I don't think there's anything in St. Cyr that's inconsistent with that. So to me, this case really comes down to we agree he wasn't advised of 212C. We agree he doesn't have to exhaust his remedies because he was deported before the deadline of his BIA appeal is due. So then the question comes down to prejudice. And as this Court knows, and we can see generally in the first instance, this Court likes to, of course, to pass on this issue. And here there was not an expressed finding, but we would still argue that a remand is not necessary. And we relied primarily on Gonzales-Valerio and also just general principles that a remand is not necessary when the record is already sufficiently clear to pass on an issue. And why do we say sufficiently clear? We know what the standard is. To show prejudice, the defendant would have to show plausible grounds for relief. In another issue that was discussed in the case earlier today, we are contending that it's actually a heightened standard because in this case the defendant would have to show unusual or outstanding equities. And why is that? Because of the seriousness of his criminal history. Most notably, he has a forcible rape conviction, which I don't think there could be any question that that's serious. And then in addition to that, I believe he had four DUI misdemeanors and also some driving on suspended license, all in the past, all in a 10-year period before his 1999 removal hearing. It's also unquestioned under the law of the circuit that the defendant has the burden of proving prejudice. And as we pointed out, defense was put on notice of this burden in the Court below. The District Court filed this motion in March 2003 to dismiss the indictment. There was, I believe, an intervening hearing in May, responsive pleadings from the government, and the District Court finally denied the motion in June 2003. In that entire time, the only evidence of prejudice that the defendant relied on was that statistical claim that I believe in the few years, five or six years before 212C relief was eradicated, that 51.5 percent of aliens tended to get that relief. And I believe it was also discussed in an argument earlier today, this Court in the Krauss-Beltraud case held that statistics alone are insufficient. So we know the defendant had the burden. It was clear since the Ombach decision of this Court in Pro Tovar in 1992 that the defendant bears the burden of proving prejudice. We stated in our responsive pleadings you have to look at the equities that are listed in St. Cyr, family ties, criminal record, employment history, community service. There's a lot of your --- But the U.S. shows that he has a plausible claim for 212. Right. True. But I still, I think there's a little more to it, though, when you put that unusual or outstanding equities into play. And in this case, we know from the PSR, it was a thorough report. Defense counsel was present with the defendant at the time of that interview. There was not a single factual objection that was ever lodged to any finding made in that PSR. And what does that PSR tell us? Unlike some of the people who appeared before you today, Your Honors, this defendant has no children. He's never been married. He had a sporadic work history at most. The PSR reflects significant periods of unemployment. No community service, no military record. And in addition, there's a couple of facts. He didn't emigrate into the United States until he was 13. A lot of these applicants from these cases, they come over a tender age of infancy. They've been raised here the entire time. And this defendant, unlike most 212C, or a significant number, is fluent in Spanish. In fact, a pre-sentence interview was conducted in Spanish. That would tend to diminish any claim of prejudice or hardship to him in the event of deportation. And also, according to the PSR, he has relatives in Mexico to live with. I mean, on that record, it's really up to this Court. If it goes back to the district court, I'm fairly confident how the result will turn  We may be back here a year from now. But if this Court, it doesn't have to. There's no rule that says this Court has to remand. In Gonzales-Valerio, both Judge Tachibana and Judge Pregerson were on that case, made an alternative holding. In the same context where unusual or outstanding equities had to be applied, this Court looked at the record even though the district court hadn't done so in the first instance. And the only equities in this defendant's favor are that he was here, I believe, for 19 years, and that most of his extended family lives here. But it's also been pointed out, that doesn't really distinguish him in any unusual or outstanding way from the usual 212C applicant. And, in fact, again, the Ayala-Chavez case that was cited by this Court in Gonzales-Valerio stated almost the same thing, that the defendant there had a 20-year residency. Most of his family lived here. And unlike Interior Mata, the defendant in that case actually had a minor daughter that he was taking care of, and that still wasn't found to rise to the level of unusual or outstanding equities. And so on that, unless the Court has any questions, I believe that we listen to them. All right. Thank you. You've got a better response than this. Sure. Just to quote Gonzales-Valerio at the end, the Court states, in addressing the issue of equities, even if he were not barred, the difficulty of overcoming these hurdles further undermines his claim of prejudice. Obviously, I don't know what is in the mind of Your Honors, but that certainly does not sound to me like the Court was issuing an alternative holding. I think the issue here is very clear. It was never briefed. The prejudice issue was never briefed below. Judge Moskowitz instructed us we're going to reach the issue of whether or not there was a due process violation. If there is a due process violation, we will then address the issue of prejudice. We never had that opportunity. Mr. Interior Mata, as demonstrated by the pre-sentence report, has extended family ties in the United States. He and his mother are very close. He and his brothers and sisters are very close. He and his nieces and nephews are very close. All that could have been addressed had we had the opportunity to do so. Finally, I would just note that it is my belief, and I could be incorrect on this because I don't have the Arrieta case with me, but I believe that Mr. Arrieta was convicted of some type of sexual assault, and Mr. Arrieta had to meet the higher standard of 212-H relief. This is 212-C. It is a lower burden, and if Mr. Arrieta could meet it on 212-H for sexual assault, I submit that it would certainly be possible, plausible, for Mr. Interior Mata to believe it. If the Court does not adopt the alternative holding in Obaldo-Figueroa, it should remand for finding on prejudice. Thank you. Thank you. All right, now we come to Stevenson.
judges: Pregerson, Tashima, Paez